# CIRCUIT COURT OF THE CITY OF NORFOLK

Jerry W. Kilgore,
Attorney General
of Virginia, ex rel.
Commonwealth of Virginia

v.

Paul Martin Hurst

April 20, 2004

Case No. (Law) L03-2611

BY JUDGE JOSEPH A. LEAFE

The Attorney General petitioned the Court for the civil commitment of Respondent Paul Martin Hurst as a sexually violent predator, as provided for by the Civil Commitment for Sexually Violent Predators Act, Virginia Code § 37.1-70.1, *et seq.* On December 18, 2003, this Court found probable cause to believe Hurst was a sexually violent predator and ordered him held accordingly; subsequently, Hurst was tried before the Court on March 23, 2004. Having considered the applicable law and the evidence presented by both parties, the Court finds that the Attorney General has not presented clear and convincing evidence that Hurst meets the statutory definition of a sexually violent predator.

Hurst was convicted in this Court of forcible sodomy on March 15, 2000, the victim being the fourteen year old son of his father's girlfriend, and Hurst was sentenced to four years and five months incarceration. His anticipated release date was December 12, 2003; however, he has been in

continuous custody since that date pending the outcome of this proceeding. Prior to Hurst's anticipated release date, the Director of the Virginia Department of Corrections notified the Commitment Review Committee (the CRC) of Hurst's eligibility for civil commitment, based on Hurst obtaining a score of four on the Rapid Risk Assessment for Sexual Offender Recidivism (RRASOR). The CRC assessed Hurst and forwarded its assessment on to the Attorney General. The Attorney General initiated this proceeding by filing the petition in this Court to civilly commit Hurst in this Court pursuant to Virginia Code § 37.1-70.6(A).

The Act, which became effective April 2, 2003, provides for the civil commitment of sexually violent predators, separate from and in addition to criminal sanctions. A sexually violent predator is defined by statute as someone who has been convicted of a sexually violent offense, or who has been charged with a sexually violent offense but is incompetent to stand trial, who *because of* a mental abnormality or personality disorder finds it difficult to control his predatory behavior, making him likely to engage in sexually violent acts. Va. Code § 37.1-70.1 (emphasis added). A felony conviction of forcible sodomy qualifies as a predicate sexually violent offense. Va. Code § 37.1-70.1. Mental abnormality or personality disorder is defined as "a congenital or acquired condition that affects a person's emotional or volitional capacity and renders the person so likely to commit sexually violent offenses that he constitutes a menace to the health and safety of others." Va. Code § 37.1-70.1. At trial, both the respondent and the Attorney General have the right to a jury trial. If, as in the present case, neither party requests a jury, the trial will be by the Court. Va. Code § 37.1-70.9(A), (B). The Attorney General has the burden of proving the respondent is a sexually violent predator by clear and convincing evidence. Va. Code § 37.1-70.9(C).

While the constitutionality of the Act is not being challenged, the Court notes that the United States Supreme Court has upheld similar legislation. *See Kansas v. Hendricks*, 521 U.S. 346 (1997). The Kansas Sexually Violent Predator Act, which the Supreme Court upheld, requires for civil commitment that a person convicted of a sexually violent offense suffer from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexually violence. Kan. Stat. Ann. § 59-29.02(a). In upholding the Kansas Act, the Supreme Court found that the Kansas definition of mental abnormality or personality, which is nearly identical to the Virginia definition, satisfied substantive due process requirements. *Hendricks*, 521 U.S. at 346. The Supreme Court's ruling in *Kansas v. Crane*, 534 U.S. 407 (2002), clarified that some "lack of control determination is required to civilly commit a dangerous sexual offender;

although, there is no requirement that the state prove total or complete lack of control on the part of the offender." *Id.* at 411-12.

Hurst, presently twenty-two years old, has no convictions of sexual violence other than the predicate conviction he completed his sentence for, and he has no prior adult convictions of any type. He does, however, have a juvenile conviction record, but none involving sexual violence. While incarcerated for the predicate offense, Hurst incurred fourteen institutional infractions, one of which was for engaging in consensual sexual acts with another inmate. During his incarceration, Hurst was transferred from the general prison population to the SORT Program on December 19, 2000; he was also involved in the Sex Offender Awareness Program (SOAP), his involvement in which has been evaluated as ranging from appropriate behavior and appropriate participation to disruptive behavior and poor participation. Hurst completed SOAP but was subsequently removed from the SORT Program on June 2, 2002, due to disruptive behaviors and sexual behavior with inmates. Before his removal from SOAP, Hurst reportedly did make some progress, recognizing the coercive nature of the offense. Furthermore, Valerie E. Brickell, M.S., a senior psychologist with the SORT Program at Brunswick Correctional Center, testified for the Attorney General that, in the event Hurst agreed to discontinue his institutional violations, she would have accepted him back into the SORT Program.

By Hurst's account to evaluating psychologists, who testified at trial, Hurst has a history of mental illness and psychiatric treatment, including his reported diagnosis with bipolar personality disorder at the age of thirteen and an additional diagnosis of attentional deficit hyperactivity disorder. He also has a history of psychotropic medication, including mood stabilizers and antipsychotic drugs, as well as a history of drug and alcohol abuse.

Christine A. Nogues, Psy. D., whose services were retained by the Attorney General's office, evaluated Hurst on November 10th and 13th, 2003, which included reviewing records, conducting a clinical interview and conducting certain psychological tests and actuarial measures. Dr. Nogues diagnosed Hurst with antisocial personality disorder with borderline traits. Antisocial personality disorder, as indicated in Dr. Nogues's report, is characterized by a pervasive pattern of disregard for, and violation of, the rights of others. In the summary portion of her report, Dr. Nogues noted Hurst's impulsiveness in decision-making, a characteristic concurrent with an antisocial personality diagnosis. This impulsiveness was also a focal point of her trial testimony. Importantly, Dr. Nogues testified on cross-examination that this characteristic does not make Hurst unable to control his behavior. Regarding Hurst's diagnosis with antisocial personality

disorder, Dr. Nogues testified that antisocial personality disorder is a condition that can possibly be treated with medication but cannot be cured. Furthermore, Dr. Nogues testified, antisocial personality disorder does not make an individual more likely to commit sexually violent offenses in particular.

On the RRASOR, which was administered to Hurst while incarcerated, he was given a score of four out of five. However, there existed controversy as to the applicability of one of those points. One point was scored for the institutional infraction Hurst had obtained for engaging in consensual sexual acts with another inmate. It has been argued that the point should not be given for any institutional infraction that would not be a criminal offense outside of the institution. In fact, the expert witnesses for both the Attorney General and Hurst admit the authoritativeness of the directive not to include in the RRASOR score institutional infractions that would not be a criminal offense otherwise. Given this development, Hurst would have scored a three when initially tested and would not have been referred to the CRC. Assuming Hurst scored a three out of five, according to the report of Thomas A. Pasquale, Ph. D., who was retained on behalf of Hurst, that would put Hurst at a medium-high probability of recidivism if returned to the community. On the Static-99 Sex Offender Risk Assessment, Hurst scored a five, the highest potential score being a twelve. Trial testimony called into controversy the award of one point to Hurst for not having lived with a lover for at least two years, the basis of the controversy being Hurst's relative youth and time spent incarcerated. Even with a score of five, according to Dr. Nogues's report, Hurst falls into the medium-high risk of recidivism.

Additionally, Dr. Nogues completed the PCL-R, a standardized scale of psychopathic personality traits, and Hurst scored a twenty-two out of forty. Dr. Nogues's report indicates that, while the general population scores an average of six, a score of twenty-two is not uncommon in a prison population. A score of twenty-two, according to Dr. Nogues's report, indicates that Hurst is "moderately at risk for general violence, especially opportunistic, instrumental violence" based on the trait of psychopathy. Another test, the SORAG, which was administered without the inclusion of phallometric test results, indicated a 58% probability of recidivism in seven years and an 80% probability of recidivism in ten years, again according to Dr. Nogues's report. While not determinative in this case, the Court also notes that both Dr. Nogues and Dr. Pasquale, in their respective reports and in their trial testimony, characterized Hurst's behavior as opportunistic, not predatory. While Dr. Nogues opined that Hurst was a sexually violent predator and an appropriate candidate for civil commitment, Dr. Pasquale

stated in his report that Hurst, convicted on one predicate offense and having a diagnosis of antisocial personality disorder, is similar to many individuals Dr. Pasquale has treated in a community sexual offender program.

The Court duly considers the results presented by both Dr. Nogues and Dr. Pasquale regarding probabilities of recidivism, including those mentioned above, and weighs them accordingly. However, a key element of the statutory requirements for labeling an individual as a sexually violent predator is that the individual be likely to commit sexually violent acts in the future *because of* his mental abnormality or, as in the present case, personality disorder. This connection between the personality disorder and the likelihood of engaging in future sexual violence must be proven, along with the other statutory elements, by clear and convincing evidence.

The Attorney General has presented no evidence to support the conclusion, by clear and convincing evidence, that Hurst is unable to control his predatory behavior and likely to engage in future sexual violence *because of* his diagnosis with antisocial personality disorder. At best, the Attorney General has offered evidence to support the proposition that, because of Hurst's antisocial personality disorder, Hurst is impulsive in his actions and decision-making. Section 37.1-70.1 of the Code of Virginia is explicit in requiring a connection between a mental abnormality or personality disorder and the likelihood of engaging in future sexually violent acts. Because this element of the statutory definition of "sexually violent predator" has not been proven by clear and convincing evidence, the Court denies the Attorney General's petition.